UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60136-Civ-Seitz/O'Sullivan

LEOR EXPLORATION & PRODUCTION
LLC, PARDUS PETROLEUM L.P.,
PARDUS PETROLEUM LLC, and
WILLIAM NATBONY, as Trustee of the
DAFNA KAPLAN 2003 EIGHT-YEAR
GRANTOR RETAINED ANNUITY
TRUST and THOMAS KAPLAN 2004
TEN-YEAR GRANTOR RETAINED
ANNUITY TRUST,

        Plaintiffs,

vs.

GUMA AGUIAR,

        Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS, STAY, OR TRANSFER IN FAVOR OF PRE-EXISTING TEXAS ACTION AND SUPPORTING MEMORANDUM OF LAW

Defendant Guma Aguiar, by and through his undersigned attorneys, hereby moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(1), the *Colorado River* doctrine, and 28 U.S.C. Section 1404, to enter an order staying this litigation based on the pendency of a substantially similar previously filed action in Texas. The Texas action is currently pending in the Western District of Texas, and is the subject of a motion to remand it back to Texas state court. If the Texas action is remanded back to Texas state court, then this Court should exercise abstention and either dismiss or stay this action pending resolution of the Texas action. Alternatively, if the Texas action is not remanded and remains in federal court, then this Florida action should be transferred to the Western District of Texas under 28 U.S.C. Section 1404 for

consolidation with the Texas action. The specific grounds for this motion are set forth in the following Memorandum of Law.

## MEMORANDUM OF LAW

The instant case (the "Florida Action"), filed on January 26, 2009, is little more than a mirror image of a complaint filed nearly a month earlier in a Texas state court (the "Texas Action"). Both the Florida Action and the Texas Action involve substantially the same parties, the same dispute, and the same issues. The Texas Action has been removed to federal court, and a motion to remand is currently pending. To avoid a needless waste of judicial resources, the risk of inconsistent rulings, and unnecessary inconvenience to witnesses, this Court should stay the Florida Action pending resolution of the remand motion. Once that motion is decided, one of the following should occur:

- If the Texas Action is remanded, this Court should exercise abstention under the *Colorado River* doctrine and dismiss or stay the Florida Action pending resolution of the Texas Action.

- If the Texas Action is not remanded, this Court should transfer the Florida Action to the Western District of Texas pursuant to 28 U.S.C. Section 1404.

## FACTUAL AND PROCEDURAL BACKGROUND

Both the complaint in the Texas Action and the complaint in the Florida Action [DE # 1] allege the same set of operative facts.[1] In 2003, Guma Aguiar ("Aguiar") and his uncle Thomas Kaplan ("Kaplan") became partners in the world of oil and gas exploration. *See* Texas Compl. ¶¶ 9-11; Florida Compl. ¶¶ 13, 21. Aguiar moved to Texas and, after conducting initial research, became interested in an area of East Texas known as the Deep Bossier. Texas Compl. ¶ 9; Florida Compl. ¶ 15. Aguiar explained his plan to Kaplan, who was intrigued by Aguiar's

---

[1] A copy of the complaint in the Texas Action is attached hereto as Exhibit 1 ("Texas Complaint"). A copy of the complaint filed in the Florida Action is attached hereto as Exhibit 2 ("Florida Complaint").

2

prospect and agreed to provide funding for the project. Texas Compl. ¶ 10; Florida Compl. ¶¶ 15-16. Aguiar and Kaplan, with the help of their attorney William Natbony ("Natbony"), created Portland Energy Partners LP ("Portland LP") as the initial entity through which they would conduct their business. Texas Compl. ¶ 11; Florida Compl. ¶ 13. Aguiar received a 10 percent interest in the partnership with the bulk of the equity to be held by two family trusts. Texas Compl. ¶ 17; *see also* Florida Compl. ¶ 21.

Once Aguiar arrived in Texas, the partnership began identifying and purchasing land and leases in the Deep Bossier. Texas Compl. ¶ 12; Florida Compl. ¶¶ 16-17. Aguiar handled the lease negotiations, and Kaplan provided the funding. Texas Compl. ¶ 12; Florida Compl. ¶¶ 13, 16. By sometime in 2004, the partnership had acquired land rights to 30,000 acres in the Deep Bossier. Texas Compl. ¶ 12; Florida Compl. ¶ 17. These land rights appreciated dramatically after a third party drilled a very productive well on adjacent lands. Texas Compl. ¶ 13; Florida Compl. ¶ 17. In mid-2005, Leor Exploration and Production LLC ("Leor") was created to manage the valuable leases that the partnership had acquired. Texas Compl. ¶ 14; *see also* Florida Compl. ¶ 19. Aguiar's and Kaplan's successes continued in 2006, when EnCana Oil and Gas (USA) Inc. ("EnCana") agreed to pay $243 million to Leor for a working interest in the leases. Texas Compl. ¶ 15; Florida Compl. ¶ 20.

In 2007 a new partnership, Pardus Petroleum LP ("Pardus LP"), was formed to hold the venture's assets (in the same proportions as before), and Pardus Petroleum LLC ("Pardus LLC") was created to serve as its general partner. Texas Compl. ¶ 20; Florida Compl. ¶ 22. The partnership's labors came to complete fruition in 2007. EnCana agreed to buy out Leor's remaining interest in the leases for $2.55 billion. Texas Compl. ¶ 19; Florida Compl. ¶ 24. Aguiar received a bonus for his efforts on this sale, and the majority of Pardus LP's assets were

3

then distributed to the owners of the partnership interests. Texas Compl. ¶¶ 20-21; *see also* Florida Compl. ¶¶ 24-25. Following the sale, Pardus LP kept some of the proceeds in reserve so that the partnership could wind down. Texas Compl. ¶ 21; *see also* Florida Compl. ¶ 26.

Both the Florida and Texas Actions center on the origin, development, and sale of Leor assets, and the disagreement between Aguiar and Kaplan over those issues. According to Aguiar, Kaplan and Natbony controlled the activities of and payments made by Leor in connection with the winding down, including some $17,582,000 in unjustified distributions to five individuals and/or entities. Texas Compl. ¶ 22. Further, Kaplan and Natbony caused Pardus LLC to re-categorize Aguiar's EnCana sale bonus as a regular distribution under his equity interest in Pardus LP, effectively depriving him of the value of his interest in that partnership. *Id.* ¶ 21. And finally, Aguiar has requested an accounting of Leor, Pardus LP (which owned Leor), and the two family trusts (which owned Pardus) in order to fully understand where his share of Leor's profits went, but all of these requests have been denied. *Id.* ¶¶ 22-23.

Plaintiffs in the Florida Action assert that it was Aguiar, and not them, that took inappropriate actions with respect to assets owned by Leor and related companies. For example, they allege that Aguiar, while serving as CEO of Leor, authorized certain payments that were not made for the benefit of Leor. Florida Compl. ¶¶ 26-31. Similarly, they allege that Aguiar, while president of Portland LP, directed payments to family members who did little or no work for Portland LP. *Id.* ¶¶ 36-45. They also assert that Aguiar misappropriated Leor property in connection with the winding down process. *Id.* ¶¶ 32-35.

Aguiar filed a complaint in the Texas Action on December 30, 2008.[2] The Texas Action named Pardus LP, Pardus LLC, and Natbony (as the trustee of the two family trusts) as

---

[2] Cause no. 08-12-18280CV, District Court of Robertson County, Texas, 82nd Judicial District.

4

defendants. *See* Texas Compl. ¶¶ 4-6. Aguiar alleged breach of contract, breach of fiduciary duty, and two actions for accounting — one against Pardus LLC (for an accounting of both Pardus and Leor) and one against Natbony as trustee. *Id.* ¶¶ 25-43.

Defendants in the Texas Action removed the case to the United States District Court for the Western District of Texas on the basis of diversity jurisdiction. *See* January 7, 2009 Notice of Removal, No. 6:09-cv-00005 (W.D. Tex. 2009) (Ex. 3).[3] Those same defendants, along with Leor, then filed a complaint against Aguiar in this Florida Action less than two weeks later, seeking compensatory damages for alleged misconduct in connection with Leor's winding down and declaratory relief regarding the amount of compensation to which Aguiar is entitled. Florida Compl. ¶¶ 46-63.[4]

**ARGUMENT**

Every court has the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A federal court may stay an action on the ground that a parallel state court proceeding has similar "central allegations" and a "common central nexus" of the parties. *See Lisa, S.A. v. Mayorga*, 232 F. Supp. 2d 1325, 1327 (S.D. Fla. 2002); *see also CTI-Container*

---

[3] Aguiar filed a motion to remand on February 2, 2009 (Ex. 4), asserting that diversity jurisdiction is lacking. As a partnership, Pardus LP is a citizen of any state in which one of its partners resides, including Aguiar. Thus, Aguiar's citizenship must be imputed to Pardus LP and prevents complete diversity. *See* Ex. 4, at pp. 2-5. A response to Aguiar's motion to remand is due on February 23, 2009, and Aguiar's reply is due on March 6, 2009.

[4] Leor previously had filed a separate action against Aguiar in the Southern District of Florida on January 9, 2009 — 10 days after the filing of the Texas Action and two days after the Texas Action was removed to Federal Court. *See Leor Exploration & Prod. LLC v. Aguiar*, 09-60048 (S.D. Fla.) The complaint in that action was amended to add Pardus LP, Pardus LLC, and Natbony (each a defendant in the Texas Action) as additional plaintiffs. On January 26, 2009, Judge Zloch, acting *sua sponte*, dismissed that action without prejudice for lack of subject matter jurisdiction. Order dated January 26, 2009, *Leor Exploration & Prod. LLC v. Aguiar*, No. 09-cv-60048 (Ex. 5).

*Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) ("The inherent discretionary authority of the district court to stay litigation pending the outcome of [a] related proceeding is not questioned."). District courts also are afforded "broad discretion in determining whether to stay or dismiss litigation in order to avoid duplicating a proceeding already pending in another federal court." *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551-52 (11th Cir. 1986).

Exercise of such discretion is appropriate here because the Texas Action and the Florida Action involve the same core group of parties and substantially the same issues. If these mirror-image lawsuits proceed on parallel tracks, it would result in an unnecessary waste of judicial resources by requiring both courts to resolve identical issues; needlessly inconvenience the parties and witnesses by requiring them to expend substantial additional resources, funds, and time participating in duplicative proceedings in different fora; and create a serious risk that the same issues will be decided differently in the two competing actions. Accordingly, this Court should stay the Florida Action until Aguiar's motion to remand in the Texas Action is decided. If the motion to remand is granted, this Court should dismiss or stay the Florida Action pending resolution of the Texas Action. If the motion to remand is denied, this Court should transfer the Florida Action to the Western District of Texas for consolidation with the Texas Action.

I. **IF THE TEXAS ACTION IS REMANDED, THIS COURT SHOULD DISMISS OR STAY THE FLORIDA ACTION IN FAVOR OF THE TEXAS ACTION**

In *Colorado River Water Conservation Dist. v. United States*, the Supreme Court held that a federal court may abstain from exercising subject matter jurisdiction in favor of a concurrent state court action. 424 U.S. 800, 817-19 (1976). The so-called *Colorado River* doctrine applies "when federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320, 1330

6

(11th Cir. 2004). And once this threshold is met, the Eleventh Circuit has recognized six factors "that must be weighed in analyzing the permissibility of [*Colorado River*] abstention." *Id.* at 1331. These factors are:

> (1) whether one of the courts has assumed jurisdiction over property,
> (2) the inconvenience of the federal forum,
> (3) the potential for piecemeal litigation,
> (4) the order in which the fora obtained jurisdiction,
> (5) whether state or federal law will be applied, and
> (6) the adequacy of the state court to protect the parties' rights.

*Id.* District courts also must consider whether the later-filed litigation is vexatious or reactive. *Id.* As discussed below, these factors counsel in favor of staying or dismissing the Florida Action.[5]

### A. The Texas Action and the Florida Action Involve Substantially the Same Parties and the Same Issues

Abstention is appropriate here because the Texas Action and the Florida Action involve substantially the same parties and issues and seek similar relief. *See Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1344 n.13 (S.D. Fla. 1999) ("[E]xact parallelism is not required. It is sufficient if the two proceedings are 'substantially similar.'"). The Texas Action and the Florida Action involve virtually the same parties. The Texas Action was brought by Aguiar against Pardus LP, Pardus LLC, and Natbony in his capacity as trustee of the two family trusts (which owned the Pardus entities, and in turn, Leor). Texas Compl. ¶¶ 3-6. The Texas Action seeks various relief, including an accounting of Pardus LP and Leor. *Id.* ¶¶ 35-43. The Florida Action was brought against Aguiar by all three defendants in the Texas Action and by Leor. Florida Compl. ¶¶ 5-8.

---

[5] A district court also may stay an action pending resolution of a related case simply as a means of controlling the court's docket and managing cases before it. *See Ortega Trujillo v. Conover & Co. Communs., Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000).

7

Both actions also involve substantially the same issue: how the assets of Leor and Pardus were used and distributed. For example, both actions address the payment made to Aguiar after the EnCana sale. The Texas Action alleges that this was a bonus paid for Aguiar's efforts in consummating the sale (Texas Compl. ¶ 21), while the Florida Action asserts that it was a proportionate distribution of Aguiar's ownership interest in Pardus LP (Florida Compl. ¶ 25). The outcome of both actions will depend heavily on how this payment is characterized. Likewise, both actions also address alleged misuse of Leor funds. *See, e.g.*, Texas Compl. ¶ 22; Florida Compl. ¶¶ 26-30. Determinations as to the propriety of payments made by Leor will ultimately decide who owes what to whom and in what amount.

### B.  Abstention is Warranted Under the *Colorado River* Factors

#### 1.  A stay or dismissal of the Florida Action will avoid piecemeal litigation.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Bosdorf*, 79 F. Supp. 2d at 1344. Courts should seek to avoid "two discoveries, two trials and possibly two conflicting decisions based on the same evidence." *Sides v. Simmons*, No. 07-cv-80347, 2007 WL 3344405, at *3 (S.D. Fla. Nov. 7, 2007) (deeming such duplication "unnecessary and excessive").

Here, permitting both actions to proceed concurrently not only would cause this Court, the parties and various third parties to incur unnecessary and expensive duplication of efforts, but also would create the risk of inconsistent decisions by two courts with concurrent jurisdiction. Because both actions involve the same parties and same issues, identical discovery will have to be conducted in both actions. This will inconvenience not only the parties themselves, but also many third parties. For example, at issue in both cases is the propriety of payments to certain non-parties. *See, e.g.*, Texas Compl. ¶ 22; Florida Compl. ¶¶ 26-35. All these payments will be

relevant in both cases, either as counterclaims or to determine appropriate set-offs. Thus, if both cases proceed concurrently, all these third parties could be required to sit for two depositions — one in each action. Further, the same discovery motions could be won by one party in one action, and lost in the other action, creating confusion, disorder, and delay.

If both cases proceed concurrently, this Court and the Texas state court also will be required to decide the same ultimate issues of law and fact. For example, both courts will need to determine whether Aguiar's post-EnCana sale payment should be characterized as a bonus or a regular distribution. *See* Texas Compl. ¶¶ 20-21; Florida Compl. ¶ 25. Forcing two courts to decide the same issue — like this one — creates problems of gamesmanship and collateral estoppel:

> First, a party may try to accelerate or stall proceedings in one of the forums to ensure the more "favorable forum" rules first on an issue. . . . Second, the possibility exists that either forum will enter a ruling unaware the other forum already ruled. In such a case, the forum that loses the race will have engaged in an "unseemly and grand waste of efforts."

*Bosdorf*, 79 F. Supp. 2d at 1344 n.14 (internal citations omitted). And in the case of the post-EnCana sale payment, inconsistent treatment of that payment will greatly complicate — if not foreclose — any possibility of reconciling separate judgments and determining appropriate set-offs.

Choice of law issues provide yet another example of why piecemeal litigation should be avoided. If the Florida Action and the Texas Action proceed concurrently, it is entirely possible that the two courts would apply different state laws to the same claims, based on separate choice of law analyses. Such a scenario would only increase the likelihood that the same issues will be decided differently.

9

### 2. Texas is a more convenient forum.

Texas is a more convenient forum than Florida. The convenience inquiry focuses "primarily on the physical proximity of the federal forum to the evidence and witnesses . . ." *Ambrosia Coal*, 368 F.3d at 1332. The Florida Action's allegations relate to a Texas-based company that conducted business primarily in Texas (*see* Florida Compl. ¶¶ 13-20), and thus will require testimony of numerous Texas residents. For example, the Florida Complaint alleges that Aguiar breached his fiduciary duties by keeping various Leor employees on the payroll. Florida Compl. ¶¶ 26-30. Undoubtedly, many of Leor's former employees — most of whom still reside in Texas — will need to be deposed and appear for trial testimony in Texas. Florida is a far less convenient forum for these witnesses. Indeed, Aguiar's residency in Florida appears to be the *only* connection that the state of Florida has to the allegations featured in the Florida Action. *See, e.g.*, Florida Compl. ¶ 39 (the *only* "Florida office" was a "home office Aguiar used when he was working from his home") (emphasis added).

### 3. The Texas state court acquired jurisdiction prior to this Court.

In assessing whether abstention or dismissal under *Colorado River* is appropriate, this Court must consider which court acquired jurisdiction first and which court has progressed further in advancing the litigation. *See Ambrosia Coal*, 368 F.3d at 1333 (citing *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S 1, 21 (1983)). Both considerations counsel in favor of abstention here. The Texas Action was filed before the Florida Action. Aguiar also has commenced discovery in the Texas Action. *See, e.g.*, Pl.'s First Set of Interrogs. to Defs (Ex. 6); Pl.'s First Req. for the Produc. of Docs. to Defs. (Ex. 7); Subpoena Issued to Katten Muchin Rosenman LLP (Ex. 8). And, in connection with personal jurisdiction issues, the parties have already scheduled the deposition of Natbony in the Texas Action. Conversely, there has been no

progress at all in the Florida Action. Indeed, the only pleading or discovery mechanism that has been filed or served by any party in the Florida Action is the complaint itself.

### 4. Both the Texas Action and Florida Action consist solely of state law issues, and federal law is not implicated.

Abstention also is warranted because both the Texas and Florida Actions assert only state law claims. When confronted with parallel proceedings, federal courts have greater latitude to defer to state courts in actions involving determinations of state law. *See Moses H. Cone*, 460 U.S. at 26 ("presence of state-law issues may weigh in favor of [abstention]"); *see also Bosdorf*, 79 F. Supp. 2d at 1345 ("involvement of federal law ordinarily weighs heavily in favor of federal court exercising jurisdiction"). Here, no federal claims have been alleged in either action. *See* Texas Compl. ¶¶ 25-43; Florida Compl. ¶¶ 46-63. Thus, this Court should abstain from this state law action.

### 5. The Texas state court can adequately protect all parties' rights.

Finally, staying this action in favor of the Texas Action will not harm the instant plaintiffs' rights. There is no reason to believe that the Texas state court cannot adequately protect the rights of all parties to both actions. All plaintiffs in the Florida Action are either Texas or New York citizens, and given their involvement with Leor's business operations, have contact with and ties to Texas. Further, Texas courts are more familiar with the natural gas industry and are in a better position to address lawsuits relating to this industry. Moreover, the matters to be decided will directly impact Texas' economy because Leor and the other plaintiffs in the Florida Action operated in Texas. On balance, Texas courts have the greatest interest in seeing this dispute resolved properly.

### C. The Florida Action is Vexatious and Reactive in Nature

Apart from the *Colorado River* factors, courts are more likely to abstain where it appears that an action is "vexatious or reactive" in nature. *See Ambrosia Coal*, 368 F.3d at 1331 (citing *Moses H. Cone*, 460 U.S. at 17, n. 20). Here, there is strong evidence that the Florida Action is both vexatious and reactive. First, plaintiffs in the Florida Action never mentioned or threatened a lawsuit against Aguiar until after the complaint in the Texas Action was filed. Second, less than two weeks after Aguiar initiated the Texas Action, the plaintiffs in the Florida Action filed their first complaint. Third, three of the four plaintiffs in the Florida Action also are defendants in the Texas Action, and the sole plaintiff in the Texas Action — Aguiar — is the sole defendant in the Florida Action. These facts, taken together, strongly suggest that the instant plaintiffs filed the Florida Action as a retaliatory strike against Aguiar and an effort to "forum shop" their way out of the Texas state court system. Such forum shopping serves to "destroy the independence of the state and federal courts, and to defeat any hope for judicial economy and the orderly resolution of cases." *McDermott v. Toyota Motor Sales Co., Ltd.*, 487 F. Supp. 484, 486 (D.C. Tenn. 1980); *see also Allied Machin. Serv. Inc. v. Caterpillar, Inc.*, 841 F. Supp. 406, 410 (S.D. Fla. 1993) (entering a stay in part because the procedural history provided "the impression that Plaintiff filed its federal action in pursuit of a more sympathetic forum"). To prevent such gamesmanship, this Court should dismiss or stay the Florida Action.

### II. IF THE TEXAS ACTION IS NOT REMANDED, THIS COURT SHOULD TRANSFER THE FLORIDA ACTION TO THE WESTERN DISTRICT OF TEXAS FOR CONSOLIDATION WITH THE TEXAS ACTION

If Aguiar's motion to remand the Texas Action is denied, this Court should transfer the Florida Action to the Western District of Texas for consolidation with the Texas Action. "[F]or the convenience of the parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) aims "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). When considering a motion to transfer, courts must first consider whether the action for which transfer is being sought could have been brought in the transferee court. *See Jewelmasters, Inc. v. May Dept. Stores Co.*, 840 F. Supp. 893, 894 (S.D. Fla. 1993). If this question is answered in the affirmative, courts then examine a variety of additional factors, including: 1) matters of judicial economy; 2) convenience of the parties and the witnesses; and 3) plaintiffs' choice of forum. *See Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985). On balance, these factors strongly favor transfer of the Florida Action to the Western District of Texas.

### A. The Florida Action Could Have Been Brought in Texas

"An action 'might have been brought' in a proposed transferee court if that court has jurisdiction over the subject matter of the action, if venue is proper there, and if the defendant is amenable to process issuing out of the transferee court." *Miot v. Kechijian*, 830 F. Supp. 1460, 1465 (S.D. Fla. 1993). If Aguiar's motion to remand is denied, the Western District of Texas will have determined that complete diversity exists in that case. The addition of Leor to the Texas Action would not destroy diversity, as Leor is a Delaware LLC whose underlying members are citizens of New York. *See* Florida Compl. ¶¶ 5, 8. Moreover, venue is proper in the Western District of Texas because a substantial part of the events or omissions giving rise to plaintiffs' claims in the Florida Action occurred in that district. *See* 28 U.S.C. § 1391(a); Florida Compl. ¶¶ 15-20, 24-25. Accordingly, if the Texas Action remains in federal court, it logically follows that the Florida Action could be brought in that court as well.

13

### B. Matters of Judicial Economy Favor Transfer

The Eleventh Circuit has mandated that where duplicative litigation exists, "[i]n the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982). Further, transfer is particularly appropriate where it will result in more efficient pre-trial discovery, savings of time and money, avoid duplicative litigation, and prevent inconsistent results. *See, e.g., Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1301 (S.D. Fla. 2002); *see also Cordis Corp. v. Siemens-Pacesetter, Inc.*, 682 F. Supp. 1200, 1202 (S.D. Fla. 1987). For the reasons set forth above (*see supra* Section I-B(1)), transfer of the Florida Action to the Western District of Texas will promote judicial economy. Both actions involve the same parties and similar issues, and transfer will prevent identical discovery from having to be conducted twice.

Transfer to the Western District of Texas also will eliminate the possibility that two federal courts might decide the same issues in an inconsistent manner. Plaintiffs in this action must assert their claims here as counterclaims in the Texas Action. *See* Fed. R. Civ. P. 13(a)(1) ("A pleading must state as a counterclaim any claim that . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claims"); *Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962) (Rule 13(a) is intended "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters."). Because the instant plaintiffs instead chose to file a separate action concerning their counterclaims, both this Court and the Western District of Texas will be forced — absent a transfer — to decide the exact same issues and claims, and to run the risk of deciding the same matters inconsistently. Indeed, these exact concerns have caused numerous federal courts — confronted with claims that

14

should have been asserted as counterclaims in other actions — to transfer the second-filed action to the district court where the first action was filed. *See, e.g., Meterlogic*, 185 F. Supp. 2d at 1300-05; *see also, e.g., Colortyme Fin. Serv., Inc. v. Kivalina Corp.*, 940 F. Supp. 269, 274-75 (D. Haw. 1996); *Black & Decker Corp. v. Vermont Am. Corp.*, 915 F. Supp. 933, 938-39 (N.D. Ill. 1995); *Williams v. Nat'l Hous. Exch. Inc.*, 898 F. Supp. 157, 161 (S.D.N.Y. 1995); *Laughlin v. Edwards Bus. Machs., Inc.*, 155 F.R.D. 543, 545 (W.D. Va. 1994); *New England Mach., Inc. v. Conagra Pet Prods. Co.*, 827 F. Supp. 732, 734 (M.D. Fla. 1993); *Blessing v. Norman*, 646 F. Supp. 82, 85 (N.D. Ga. 1986).

### C. The Western District of Texas is a More Convenient Forum than the Southern District of Florida

When determining whether the transferee court provides for a more convenient forum, courts evaluate various factors specific to the litigation at issue, including "(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel the presence of unwilling witnesses; (5) the cost of obtaining the presence of witnesses; and (6) the public interest." *Stateline Power Corp. v. Kremer*, 404 F. Supp. 2d 1373, 1380 (S.D. Fla. 2005).

These factors support the transfer of the Florida Action to Texas. Such a transfer will create efficiencies for third-party witnesses and discovery, given that the Florida Action raises allegations relating to various entities doing business in Texas (*see* Florida Compl. ¶¶ 13-20), and thus will involve the testimony of many Texas residents. Conversely, the parties themselves would not be inconvenienced by such a transfer. Indeed, none of the plaintiffs in the Florida Action have any connection to the state of Florida. *See* Florida Compl. ¶¶ 5-7.

Texas also has a strong public interest in the outcome of the Florida Action. The Florida Action relates to the natural gas industry — an industry of vital importance to the economy of

15

Texas. Thus, Texas courts have a strong public interest in ensuring that the claims in the Florida Action are resolved fairly and in a manner that promotes further expansion and growth of that critical industry.

### D. Plaintiffs' Choice of Forum Should Be Given Little Deference

Ordinarily, courts give considerable weight to the plaintiff's choice of forum. *See Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). However, where a plaintiff has chosen a forum that is not its home forum, only minimal deference to this choice is required. *See Cellularvision Tech & Telecomm., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007). Here, none of the plaintiffs in the Florida Action are citizens of Florida, and thus their decision to sue in Florida creates no obstacle to transfer.

### CONCLUSION

Unless this Court issues an order dismissing, staying, or transferring the Florida Action, two different cases addressing the same issues will proceed in two different fora before two different judges. Such an outcome would result in serious inconvenience to both courts, the parties, and third-party witnesses, and would raise the possibility of inconsistent judicial rulings. To address this problem, the Court should dismiss or stay the Florida Action if the Texas Action is remanded to state court. If the Texas Action is not remanded, the Court should transfer the Florida Action to the Western District of Texas pursuant to 28 U.S.C. Section 1404.

16

Respectfully Submitted,

Of Counsel:  
Thomas J. Wiegand  
twiegand@winston.com  
Gregory J. Miarecki  
gmiarecki@winston.com  
WINSTON & STRAWN LLP  
35 W. Wacker Dr.  
Chicago, IL 60601  
Tel: 312-558-5600  
Fax: 312-558-5700  
(*pro hac vice* application to be filed)

GREENBERG TRAURIG, P.A.  
Attorneys for Defendant  
401 East Las Olas Boulevard  
Suite 2000  
Fort Lauderdale, FL 33301  
Telephone: (954) 765-0500  
Facsimile: (954) 765-1477

By: /s/ Glenn E. Goldstein  
GLENN E. GOLDSTEIN  
Florida Bar No. 435260  
goldsteing@gtlaw.com  
JEROLD I. BUDNEY  
Florida Bar No. 0283444  
budneyj@gtlaw.com  
*Attorneys for Defendant Guma Aguiar*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF notification on February 17, 2009. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Glenn E. Goldstein
Glenn E. Goldstein

## SERVICE LIST

**Case No. 09-60136-Civ-Seitz/O'Sullivan**

Harley Shepard Tropin
hst@kttlaw.com
Thomas A. Tucker Ronzetti
TR@kttlaw.com
Kozyak Tropin & Throckmorton
2525 Ponce de Leon Boulevard
Suite 900
Coral Gables, FL 33134-6036
Telephone: 305-372-1800
Facsimile: 305-372-3508
Attorneys for Plaintiffs

107,261,282v2