# EXHIBIT 1

CAUSE NO. 08-12-18280 CV

| | | |
|---|---|---|
| GUMA AGUIAR, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| vs. | § § | ROBERTSON COUNTY, TEXAS |
| PARDUS PETROLEUM, LP, PARDUS PETROLEUM LLC, and WILLIAM NATBONY, in his capacity as Trustee of the DAFNA KAPLAN 2003 EIGHT-YEAR GRANTOR RETAINED ANNUITY TRUST and THOMAS KAPLAN 2004 TEN-YEAR GRANTOR RETAINED ANNUITY TRUST, | § § § § § § § § § § § | 82nd JUDICIAL DISTRICT |
| Defendants | § § | |

## PLAINTIFF'S ORIGINAL PETITION

1. Plaintiff Guma Aguiar files this Original Petition against Defendants, Pardus Petroleum, LP, Pardus Petroleum LLC, and William Natbony, in his capacity as Trustee of the Dafna Kaplan 2003 Eight-Year Grantor Retained Annuity Trust and the Thomas Kaplan 2004 Ten-Year Grantor Retained Annuity Trust, and would show as follows:

### DISCOVERY CONTROL PLAN

2. Pursuant to TEX. R. CIV. P. 190.1, Plaintiff intends to conduct discovery under Level 3.

### PARTIES

3. Plaintiff Guma Aguiar ("Aguiar") is a resident of Florida. Aguiar was the Chief Executive Officer of Leor Exploration and Production LLC ("Leor"). Aguiar is a limited partner of Defendant Pardus Petroleum LP and, on information and belief, a beneficiary of both the

FILED FOR RECORD
2008 DEC 30 PM 4: 44

BARBARA W. AXTELL
CLERK DISTRICT COURT
ROBERTSCH COUNTY, TEXAS

{00045892.DOC} 1

Dafna Kaplan 2003 Eight-Year Grantor Retained Annuity Trust and the Thomas Kaplan 2004 Ten-Year Grantor Retained Annuity Trust.

4. Defendant Pardus Petroleum, LP ("Pardus Partnership") is a limited partnership organized under the laws of Delaware. Defendant Pardus Petroleum LLC is the general partner of the Pardus Partnership. The other partners in Pardus Partnership are William Natbony, as trustee of the Dafna Kaplan 2003 Eight-Year Grantor Retained Annuity Trust and the Thomas Kaplan 2004 Ten-Year Grantor Retained Annuity Trust, and Plaintiff Aguiar. At all times relevant to this Complaint, the Pardus Partnership was engaged in the business of oil and gas exploration and production.

5. Defendant Pardus Petroleum, LLC ("Pardus LLC") is a limited liability corporation incorporated in Delaware, with its principal place of business in New York. At all times relevant to this Complaint, Pardus LLC was engaged in the business of oil and gas exploration and production.

6. Defendant William Natbony ("Natbony") is named in this action in his capacity as trustee of the Dafna Kaplan 2003 Eight-Year Grantor Retained Annuity Trust and the Thomas Kaplan 2004 Ten-Year Grantor Retained Annuity Trust. Natbony is a resident of New York.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court.

8. Venue is proper in Robertson County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE §15.002(a)(1) because a substantial part of the events or omissions giving rise to Aguiar's claims occurred in Robertson County.

## BACKGROUND

9. In 2003 Guma Aguiar, then 26 years old, bought a car and drove from Florida to Houston. He rented an apartment and immersed himself in the world of oil and gas exploration. Through his work with geologists and other experts, he became interested in an area in East Texas, largely in Robertson County, known as the Deep Bossier, which he believed could contain large natural gas reserves.

10. In the last quarter of 2003, Aguiar contacted his uncle and mentor, Tom Kaplan ("Kaplan"), who lived in New York City. Aguiar explained his plan to obtain a large acreage position in the prospect he had identified in Robertson County, and asked Kaplan to lend money needed to obtain leases. Kaplan was intrigued by Aguiar's prospect and agreed to provide funding. Aguiar and Kaplan agreed that the two of them would be partners in the venture, with Aguiar doing all of the work to acquire the drilling leases and other day-to-day activities, and Kaplan providing the funding.

11. The partners' ownership of their new venture was to be documented by William Natbony, an attorney in New York who was located by Kaplan and who had done other work for Kaplan. Natbony told Aguiar that Natbony represented both Aguiar and Kaplan equally in establishing an ownership structure for them, and that he recommended placing the ownership of the venture into trust because it would have tax advantages. Natbony recommended and created a partnership, called Portland Energy Partners LP, in which Aguiar and Kaplan were partners, and the ownership was placed into trusts created by Kaplan and documented by Natbony. Aguiar trusted both his uncle and mentor, Kaplan, as well as Natbony, in creating this ownership structure. Following this and up to the present time, the ownership structure of the assets held by the ultimate partners Aguiar and Kaplan has been changed several times, under the guidance and counsel of Kaplan and Natbony.

12. Aguiar continued to dedicate his efforts to identifying prospective unleased acreage and negotiating oil and gas leases, with Kaplan provided the funding. By late 2004, the two partners had approximately 30,000 acres in the Deep Bossier, in what came to be known as the Amoruso field, under lease and Kaplan had provided about $15 million.

13. The value of the leases that Aguiar had located and acquired started to appreciate in value significantly almost from the start, particularly in 2004 after a third party drilled a very productive well on adjacent lands which validated the geologic premise of the play. Through Aguiar's efforts, the partnership then entered into an exploration agreement with EnCana Oil & Gas (USA) Inc. ("EnCana"), in which EnCana agreed to complete an initial well that had already been drilled, and then drill and complete an additional eight wells. In return, EnCana would earn a 30% working interest in the prospect. Some of these wells indeed were highly successful, and the valuation of the lease portfolio continued to grow.

14. In mid-2005, Leor Exploration and Production LLC ("Leor") was created and ownership of all of the leases was placed into Leor. Later in 2005, Leor entered into a transaction with Amaranth Partners LLC in which, among other things, Amaranth loaned about $30 million to Leor. Part of the $30 million was used to pay Kaplan in full, with interest, for the funds he had provided to acquire the leasing rights. From that time forward, Kaplan had no capital investment remaining in Leor.

15. Aguiar continued to dedicate his full-time efforts and attention to building the value of the portfolio of leasing rights owned by Leor, and they indeed appreciated. In 2006, Aguiar negotiated a second transaction with EnCana in which, among other things, EnCana agreed to pay approximately $243 million to Leor in return for an additional 20% working interest – the result being that EnCana and Leor were now 50/50 owners of the prospect.

16. Yet while Aguiar was devoting his full-time efforts to Leor, he was not receiving any current return. He had received relatively little salary, for only a portion of the time he had spent on the project, and no distributions. His entire interest and expectation of profit for his efforts was by virtue of his interest that had been placed into the trusts by Natbony and Kaplan. In 2006, Aguiar requested an additional direct equity interest in the Leor assets that would result in him receiving a direct share of Leor's profit in addition to what he would receive later as a beneficiary of the trusts which held his ownership interest. Kaplan and Natbony agreed to give him a current 10% interest in the partnership that owned Leor.

17. This 10% interest was documented in late 2006. This documentation showed to Aguiar, for the first time but consistent with his understanding from Natbony when the ownership structure was created, that prior to Aguiar gaining his additional 10% interest, Leor ultimately was owned almost entirely by two trusts. One trust was called the Dafna Kaplan 2003 Eight-Year Grantor Retained Annuity Trust ("Trust 1"), and the other was called the Tom Kaplan 2004 Ten-Year Grantor Retained Annuity Trust ("Trust 2"). In addition, a smaller equity share was owned by Portland Energy LLC, which was the general partner of the new partnership. After Aguiar received his additional 10% equity stake, the ultimate ownership of Leor was held by Portland Energy Partners LP ("Portland"), which in turn was owned as follows:

| | |
|---|---|
| Trust 1: | 46.548% |
| Trust 2: | 39.312% |
| Portland Energy LLC | 4.14% |
| Guma Aguiar | 10.00% |

18. At about the same time, on November 13, 2006, Natbony, in his role as trustee of Trust 2, sent to Aguiar a one-page letter regarding Trust 2. Natbony confirmed to Aguiar in this letter that Aguiar and his children are designated as beneficiaries of the trust. Natbony also stated that he, apparently in his role as trustee of Trust 2, decided to make an election with respect to Trust 2 that would "enable (but not require) me to make larger distributions to Tom

{00045892.DOC}   5

[Kaplan] during the term of the [trust] than are currently permitted." Natbony then provided a "Consent form" that he asked Aguiar to sign, but also informed Aguiar that his consent did not matter because Natbony could do this anyway under New York law. The letter did not inform Aguiar, among other things, what assets in addition to Leor were controlled in Trust 2, what was the value of each of the assets in Trust 2, what the value of the distributions might be to Kaplan in the future, how those compared to any distributions that could have been made to Kaplan in the past, what distributions actually had been made to Kaplan in the past, or any bases that might be considered in determining whether or not to make any payments to Kaplan in the future. To the present date, despite requests to know the details of Trust 1 and Trust 2, Aguiar does not know whether or in what amounts Kaplan has received distributions from Trust 2 in connection with any of the contents of Natbony's November 13, 2006 letter.

19.  After receiving his additional 10% interest, Aguiar continued to grow the value of Leor. By the fall of 2007, the production stream of natural gas coming from the Amoruso field and Leor's other assets proved so robust that EnCana agreed to purchase from Leor its remaining 50% working interest for $2.55 billion.

20.  By this time, Kaplan and Natbony had transferred the ownership interest in Leor from Portland to a new partnership – Defendant Pardus Partnership. The Pardus Partnership, in turn, was owned by the same owners -- Trust 1, Trust 2 and Aguiar -- and in the same proportion as described above for Portland. Portland Partners was not the general partner of the new partnership, but rather Defendant Pardus LLC was created to be the general partner. During the due diligence period prior to the sale to EnCana, Kaplan and Natbony, who controlled Pardus LLC, provided an additional reward and incentive to Aguiar. They promised that if the sale to EnCana was consummated, then the Pardus Partnership would pay to Aguiar a bonus of $15 million, plus the tax liability on that amount.

{00045892.DOC}                                                          6

21. The sale to En Cana for $2.55 billion was consummated in late 2007. The Pardus Partnership kept some of the $2.55 billion in reserve so as to wind up the operations of Leor, but distributed the great majority of the $2.55 billion to the owners of the partnership interests. In addition to this payment relating to his 10% interest in the Pardus Partnership, Aguiar was paid the $15+ million bonus that was promised to him while the EnCana sale was pending. However, in 2008, Pardus LLC recategorized the $15+ million bonus as a regular distribution to Aguiar under his 10% current equity interest, and in that way underpaid Aguiar for his 10% equity interest in Pardus Partnership.

22. Kaplan and Natbony also have controlled the activities and payments made by Leor, to the detriment of Aguiar. In 2008 Pardus LLC instructed Leor to pay to certain individuals and entities amounts totaling $17,582,000, which are unjustified and not of benefit to Leor or Pardus Partnership. Aguiar requires, but has not seen, an accounting of Leor and of Pardus Partnership, which would show how the proceeds of the $2.55 billion sale to EnCana flowed through those entities and to the trusts and Aguiar, as well as what payments were made from those proceeds that never reached the trusts or Aguiar.

23. In addition, Aguiar has requested information and details of Trust 1 and Trust 2, which has been denied. Kaplan and Natbony have stated that Trust 1 and Trust 2 have made additional investments with proceeds received through Leor. Aguiar requires an accounting of all activities of Trust 1 and Trust 2, including all purchases, sales, and taxes paid, but to date has not been provided this information. Aguiar has even been denied a copy of the trust documents themselves, including any changes or amendments to the trusts.

24. On information and belief, the final accounting of Leor and of Pardus Partnership is being prepared in the hope of being finished by the end of calendar year 2008. The proceeds of the sale of Leor to EnCana were paid to Leor, and then were transferred up to Pardus

Partnership and ultimately to the owners of Leor, including Trust 1 and Trust 2. Aguiar requests that Pardus LLC and Natbony provide to him an accounting of Leor, Pardus Parnership, Trust 1 and Trust 2.

## CAUSES OF ACTION

### Count I – Breach of Contract

25. Aguiar incorporates by reference the allegations contained in Paragraphs 1-24.

26. Defendant Pardus Partnership agreed to pay to Aguiar a special bonus of $15 million, plus an additional amount to cover Aguiar's estimated tax liability on this payment, in return for services provided by Aguiar. This amount of $17,647,059 was paid to Aguiar, but since that time that amount has been taken back by being set off against distributions to which Aguiar is entitled under his 10% interest in Pardus Partnership. In this way, the wrongful set-off of the $17,647,059 amount denied Aguiar the proceeds to which he is entitled for his 10% equity interest in Pardus Partnership.

27. Aguiar performed all of his duties under this contract.

28. Pardus LLC and Pardus Partnership failed to pay Aguiar as agreed, and as a result, Aguiar has suffered damages.

### Count II – Breach of Fiduciary Duty

29. Aguiar incorporates by reference the allegations contained in paragraphs 1-28.

30. As the general partner of Pardus Partnership, Defendant Pardus LLC had a fiduciary relationship with all of its partners, including Aguiar.

31. In particular, Pardus LLC owed all partners of Pardus Partnership a duty of loyalty, including: 1) accounting to the partnership and holding for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or from use by the partner of partnership property; 2) refraining from dealing with the partnership on

behalf of a party having an interest adverse to the partnership; and 3) refraining from competing with the partnership or dealing with the partnership in a manner adverse to the partnership.

32. Pardus LLC also owed all partners of Pardus Partnership a duty of care, which required it to act in the conduct and winding up of the partnership business with the care an ordinarily prudent person would exercise in similar circumstances.

33. Pardus LLC breached these duties by instructing Leor to make distributions of funds to individuals and entities who were not entitled to them, as stated above.

34. Aguiar, as a partner of Pardus Partnership, suffered damages as a result of this breach. These improper distributions reduced the value of the interest of each of the partners in Pardus Partnership, including Aguiar, and resulted in reduced payments from the partnership.

### Count III – Accounting

### (against Pardus LLC)

35. Aguiar incorporates by reference the allegations contained in paragraphs 1-34.

36. Aguiar is a partner in Pardus Partnership. Therefore the general partner of Pardus Partnership, Pardus LLC, owes him fiduciary duties of care and loyalty.

37. One of the main assets ultimately owned by Pardus Partnership was Leor. Pardus LLC controlled certain activities of Leor, including the payment of amounts as described above.

38. Aguiar has requested, but has been denied, the details of transactions by Leor and Pardus Partnership, including the payments totaling $17,582,000 to certain entities and individuals.

39. An accounting is necessary to determine the assets of Leor and of Pardus Partnership, so as to show how the proceeds received by Leor were either spent or transferred by Leor and, in turn, by Pardus Partnership, with the remaining proceeds ultimately being paid to the partners of Pardus Partnership, including Trust 1, Trust 2 and Aguiar.

## Count IV – Accounting

### (against Natbony as Trustee of Trust 1 and Trust 2)

40. Aguiar incorporates by reference the allegations contained in paragraphs 1-39.

41. On information and belief, Aguiar is a beneficiary of Trust 1 and Trust 2. As such, both trusts and their trustee owe him fiduciary duties of care and loyalty.

42. Aguiar has requested, but has been denied, details of the trusts, including the trust documents themselves and the assets held in the trusts.

43. An accounting is the only mechanism by which Aguiar can learn about the workings of both trusts. An accounting is necessary to determine the assets of Trust 1 and Trust 2, how the assets are being deployed, and any payments made by the trusts to anyone.

## CONDITIONS PRECEDENT

44. Aguiar has performed all conditions precedent.

## REQUEST FOR DISCLOSURE

45. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiff requests that Defendants disclose, within fifty (50) days of this request, all of the information and material described in Rule 194.2 of the Texas Rules of Procedure.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Aguiar prays that Defendants be cited to appear and answer, and that upon final trial hereof, Aguiar has the following:

1) A judgment awarding Aguiar money damages in the amount of $ 17,647,059 due to the improper set-off made against his 10% interest in Pardus Partnership;

2) compensation to Leor, and ultimately to Pardus Partnership and its partners, including Aguiar, for the $17,582,000 that was improperly paid to certain individuals and entities;

3) a full accounting by Pardus LLC and Natbony of the activities of Leor, Pardus Partnership, Trust 1 and Trust 2 since their inception, including a copy of the original trust papers creating, and any documents revising, Trust 1 and Trust 2;

4) a judgment awarding Aguiar costs and reasonable attorneys' fees in connection with the preparation, filing, and prosecution of this suit;

5) and for all other relief to which he may be justly entitled.

Respectfully submitted,

By: _____

PALMOS, RUSS, McCULLOUGH & RUSS LLP
James H. McCullough
State Bar No. 13503800
306 Cedar Street
Hearne, Texas 77859
Telephone: (979) 279-3456
Facsimile: (979) 279-3712

WATT BECKWORTH
THOMPSON & HENNEMAN, L.L.P.
Dick Watt
State Bar No. 20977700
Joseph G. Thompson III
State Bar No. 00788534
1800 Pennzoil Place, South Tower
711 Louisiana Street
Houston, Texas 77002
Telephone: (713) 650-8100
Facsimile: (713) 650-8141

**Of Counsel:**

Dan K. Webb
Thomas J. Wiegand
Gregory J. Miarecki
Winston & Strawn, LLP
35 West Wacker Drive
Chicago, Illinois  60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

ATTORNEYS FOR PLAINTIFF GUMA AGUIAR