UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LEOR EXPLORATION &          CASE NO. 09-60136-CIV-SEITZ/O'SULLIVAN
PRODUCTION LLC, et al.,
    Plaintiffs,
v.

GUMA AGUIAR,
    Defendant.
_____/

GUMA AGUIAR,                        CASE NO. 09-60683-CIV-SEITZ/O'SULLIVAN
    Plaintiff,

v.

WILLIAM NATBONY, et al.,
    Defendants.
_____/

## ORDER

THIS MATTER is before the Court on the Leor parties[1] and Katten Muchin Rosenman LLP's (hereinafter "Katten") objections to the Special Master's rulings as to Exhibits 3 and 57 of the deposition of Paul McCawley. Having reviewed the applicable filings and the law, it is

ORDERED AND ADJUDGED that the Special Master's rulings regarding Exhibits 3 and 57 of the deposition of Paul McCawley are **OVERRULED**. Exhibits 3 and 57 are not privileged under the applicable law.

## BACKGROUND

On July 16, 2009, the Court held an informal discovery conference wherein the Leor parties and Katten sought a review of the Special Master's rulings during the

---

[1] The term "Leor parties" refers to Leor Exploration & Production LLC, Pardus Petroleum L.P., Pardus Petroleum LLC, Thomas Kaplan and William Natbony.

deposition of Paul McCawley that Exhibit 3 to that deposition was protected by the attorney-client privilege and Exhibit 57 was work product. See Transcript (DE# 97, 7/20/09). Following the hearing, the Court permitted the parties to brief the attorney-client and work product issues. On August 4, 2009, Guma Aguiar filed his memorandum of law. See Guma Aguiar's Memorandum of Law in Support of the Special Master's Findings Regarding the Attorney Client and Work Product Privileges (DE# 103, 8/4/09). The Leor parties and Katten filed their Joint Memorandum of Law in Opposition to Aguiar's Assertion of the Attorney Client and Work Product Privileges (DE# 112, 8/18/09). On August 27, 2009, Guma Aguiar filed his reply. See Notice of Filing Guma Aguiar's Amended Reply Memorandum of Law in Support of the Special Master's Findings Regarding the Attorney-Client and Work Product Privileges (DE# 118, 8/27/09). The undersigned has conducted an in camera inspection of the documents in dispute.

## STANDARD OF REVIEW

**1.      Attorney-Client Privilege**

The attorney-client privilege is governed by Florida law in the instant case. See Bradt v. Smith, 634 F.2d 796, 800 (5th Cir. 1981)[2] (noting that Florida law governs the application of the attorney client privilege in a federal diversity action). In Florida, the attorney-client privilege is contained in section 90.502, Florida Statutes. Section 90.502 states in part that: "A client has a privilege to refuse to disclose, and to prevent any

---

[2] The Eleventh Circuit in Bonner v. City of Prichard, 661 F. 2d 1206, 1207 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." Fla. Stat. § 90.502 (2). The statute provides that: "[a] communication between lawyer and client is 'confidential' if it is not intended to be disclosed to third persons other than . . . [t]hose to whom disclosure is in furtherance of the rendition of legal services to the client" or " [t]hose reasonably necessary for the transmission of the communication." Fla. Stat. § 90.502 (1)(c). The party asserting the privilege has the burden of proof. Black v. State, 920 So.2d 668, 671 (Fla. 5th DCA 2006).

**2.     Work Product Doctrine**

The work product doctrine protects from disclosure materials prepared by or for a party or for that party's attorney in anticipation of litigation. Hickman v. Taylor, 329 U.S. 495 (1947). The doctrine is codified in Fed. R. Civ. P. 26(b)(3). Rule 26(b)(3) states in part as follows: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). Litigation need not be imminent "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981). The party invoking the work product doctrine has the burden of establishing its applicability. Stern v. O'Quinn, 253 F.R.D. 663, 674 (S.D. Fla. 2008).

## ANALYSIS

The instant action is part of a series of lawsuits between Guma Aguiar

(hereinafter "Aguiar"), Aguiar's uncle Tom Kaplan, William Natbony and various related entities in the oil and gas exploration and production business. On June 23, 2009, Paul McCawley, an attorney for Aguiar, was deposed in the instant action. A Special Master presided over this deposition. During the deposition, the Leor parties sought to question Mr. McCawley about Exhibits 3 and 57. Aguiar objected to the use of these exhibits on the grounds that Exhibits 3 was protected by the attorney-client privilege and Exhibit 57 was work product. The Special Master ruled in Aguiar's favor finding that the documents were privileged. The Leor parties and Katten appeal from the Special Master's rulings.

**1.      Exhibit 3**

Exhibit 3 is an email from Paul McCawley to Garrett Smith dated April 16, 2007. The email states in its entirety as follows: "Garrett, please review and let me know if there is something I did not remember. Paul." See Exhibit 3, (DE# 101, 8/4/09). The attached document is a memorandum from Mr. McCawley to the file dated April 16, 2007 memorializing a telephone conference with Guma Aguiar, Garrett Smith and William Natbony concerning the corporate structure of Leor and its parent entities and Aguiar's interest. Id. Mr. Smith made certain black-lined[3] changes to the memorandum prepared by Mr. McCawley.

At the time, Aguiar was CEO and Vice-Chairman of Leor. Paul McCawley, a trusts and estates attorney, was counsel for Aguiar. Mr. McCawley was retained to document Aguiar's interest in certain entities. William Natbony is counsel for Leor and

---

[3] At the July 16, 2009 hearing, counsel for Aguiar represented to the Court that the black lines on Exhibit 3 were changes made by Garrett Smith.

served as the trustee of two GRATs:[4] the Dafna Kaplan 2003 Eight-Year GRAT and the Tom Kaplan 2004 Ten-Year GRAT.

Garrett Smith was the Vice-President and In-House General Counsel of Leor. The parties dispute Mr. Smith's role with respect to Aguiar. The Court finds that Garrett Smith acted as Aguiar's personal advisor but was not Aguiar's personal attorney. To the Court's knowledge, Mr. Smith's deposition has not been taken. However, in Exhibit 3, Mr. Smith makes a notation identifying himself as "personal advisor to Guma." See Exhibit 3, (DE# 101, 8/4/09). Aguiar testified that Mr. Smith was never a personal lawyer to him but that Mr. Smith gave him [Aguiar] advice. William Natbony also testified that Mr. Smith was "a personal advisor to Mr. Aguiar." See Deposition of William Natbony (DE# 103-2 at 5, 8/4/09). Leor, citing Natbony's deposition testimony, argues that "even though Natbony acknowledged that he had consented to Smith serving as Aguiar's advisor, he also confirmed that this arrangement did not go forward." See Memorandum of Law in Opposition to Aguiar's Assertion of the Attorney Client and Work Product Privileges (DE# 112 at 4, 8/18/09) (footnote omitted). The undersigned has reviewed the excerpts of Mr. Natbony's deposition and finds that what Mr. Natbony testified to was that Garrett Smith's role as Aguiar's **attorney** never materialized and Aguiar eventually retained Paul McCawley.[5] Thus, the record shows that Mr. Smith did serve

---

[4] The term "GRAT" stands for Grantor Retained Annuity Trust. It is a mechanism used to make financial gifts to family members while avoiding certain tax obligations.

[5] Mr. Natbony testified at his deposition as follows:

Mr. Aguiar asked me whether it would be all right if Mr. Smith represented him as his personal lawyer. And I said yes, that would be all right. I understood **subsequently** from Mr. Smith and Mr. Aguiar that they had

as Mr. Aguiar's advisor.

Aguiar argues that Exhibit 3 is protected by the attorney-client privilege because it was a communication between Aguiar's attorney, Paul McCawley, and Garrett Smith in his capacity as Aguiar's "personal advisor and agent." See Guma Aguiar's Memorandum of Law in Support of the Special Master's Findings Regarding the Attorney Client and Work Product Privileges (DE# 103 at 7, 8/4/09). The attorney-client privilege "extends to the necessary intermediaries and agents through whom such communications are made." See Gerheiser v. Stephens, 712 So.2d 1252, 1254 (Fla. 4th DCA 1998). Aguiar notes that Mr. Natbony, as a principal of Leor, consented to Garrett Smith representing Aguiar as his personal advisor or agent. Id. at 2. Leor counters that Mr. Natbony did not have the authority to bind Leor because Natbony was not an officer, director or principal of Leor. See Joint Memorandum of Law in Opposition to Aguiar's Assertion of the Attorney Client and Work Product Privileges (DE# 112 at 9, 8/18/09). In its reply, Aguiar merely restates his position that Mr. Natbony was a principal of Leor but

---

decided not to move forward with this for a variety of reasons.

See Deposition of William Natbony (DE# 103-2 at 5, 8/4/09)(emphasis added). Mr. Natbony further testified that:

> [w]e had several conversations about [the] representation that Mr. Aguiar could have, should have. I pitched Mr. Aguiar for his business on several occasions. Mr. Aguiar demurred on several occasions, and we talked about various alternatives. **Mr. Smith was one of them. Ultimately, after Mr. Smith, Paul McCa[w]ley was the one that Mr. Aguiar chose as counsel**.

Id. (emphasis added).

6

does not provide the Court with evidence establishing this fact.[6] Even assuming Mr. Natbony was a principal of Leor and had the authority to appoint Mr. Smith as an advisor to Aguiar, Exhibit 3 is not protected by the attorney-client privilege because Aguiar had no reasonable expectation of privacy in Exhibit 3 for the reasons discussed below.

Confidentiality is essential to the attorney-client privilege. "It is well established that no privilege attaches to attorney-client communications consisting of non-privileged information." See Johnson v. State, 497 So.2d 863, 867 (Fla. 1986)(finding that a letter whose existence was known to an investigator and whose contents were know to the defendant's girlfriend was not protected by the attorney-client privilege); Skorman v. Hovnanian of Florida, Inc., 382 So.2d 1376, 1377 (Fla. 4th DCA 1980) (noting that "not all communications between lawyer and client are privileged"). Under the statute, "[a] communication between lawyer and client is 'confidential' if it is not intended to be disclosed to third persons other than . . . [t]hose to whom disclosure is in furtherance of the rendition of legal services to the client" or " [t]hose reasonably necessary for the transmission of the communication." Fla. Stat. § 90.502 (1)(c). Aguiar has not established the intent to maintain Exhibit 3 confidential. At the time he sent the email, Mr. McCawley knew Mr. Smith was an attorney and that he worked for Leor. See

---

[6] Aguiar states that Mr. Natbony is a principal of Leor. See Guma Aguiar's Memorandum of Law in Support of the Special Master's Findings Regarding the Attorney Client and Work Product Privileges (DE# 103 at 2, 8/4/09) (in support, Aguiar cites to pages 52 and 106 of Mr. Natbony's deposition but does not provide the Court with a copy of these pages).

7

Deposition of Paul McCawley (DE# 103-3 at 49, 8/4/09).[7] It is undisputed that Mr. McCawley sent the email to Mr. Smith's Leor email account.  The email from Mr. McCawley to Mr. Smith does not ask Mr. Smith to keep the contents of the memorandum confidential. When asked whether Mr. McCawley expected Mr. Smith to keep the document to himself, he responded that he did not know what Mr. Smith would do with the document. Id.[8]

Aguiar had no reasonable expectation of privacy in emails transmitted through Leor's server.[9] Aguiar acknowledges that "whether or not an employee handbook's generic warning that the employer has a right to access all e-mails transmitted through the employer's e-mail system renders unreasonable an expectation of privacy 'must be decided on a case-by-case basis.'" See Guma Aguiar's Memorandum of Law in Support of the Special Master's Findings Regarding the Attorney Client and Work Product Privileges (DE# 103 at 9, 8/4/09)(citing In Re Asia Global Crossing, Ltd., 322 B.R. 247, 256 (S.D. N.Y. 2005)). In Re Asia Global Crossing, Ltd., 322 B.R. 247, 257 (S.D. N.Y. 2005), lists four factors a court should consider in determining whether an employee has an expectation of privacy in computer files or email. These factors are:

---

[7] To avoid confusion, when citing transcripts the undersigned will refer to the page number on the top left corner of the docket entry instead of the original page number of the transcript.

[8] Mr. McCawley speculated that he would have wanted Exhibit 3 to be kept from Mr. Natbony. See Deposition of Paul McCawley (DE# 103-3 at 50, 8/4/09). "Garrett was acting on our behalf, and that was something between us as advisors to Guma." Id.

[9] Although it is not apparent from the face of Exhibit 3, the parties do not dispute that Mr. McCawley sent Exhibit 3 to Mr. Smith at Mr. Smith's Leor email address. In fact, Leor was in possession of Exhibit 3 and produced it to Aguiar during the litigation. See Transcript, July 16, 2009 Hearing (DE# 97 at 8 - 9, 7/20/09).

> (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or email, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?

Id. (footnote omitted). Each of these factors are present here. Leor's employee handbook states that Leor owns all electronic communications and that individuals using the Leor email system have no expectation of privacy. See Employee Handbook (DE# 112-5 at 10, 8/18/09). The Leor employee handbook expressly states: "Employees should have no expectation of privacy with regard to communications made over [Leor's] systems." See Employee Handbook (DE# 112-5 at 10, 8/18/09) (emphasis in original). The employee handbook further advises that "[Leor representatives] may access and monitor the use of its systems and equipment from time to time" and that "employees should not use Leor's electronic . . . communications systems to communicate, receive, or store information that they wish to keep personal or private." See Employee Handbook (DE# 112-5 at 10, 8/18/09). Thus, the Court finds that there was no reasonable expectation of privacy regarding communications transmitted through Leor's email server.

> Aguiar argues, without citing authority, that:
>
> it simply was not unreasonable for Aguiar, McCawley and Smith to assume and understand that Leor's authorizing Smith to act as Aguiar's personal lawyer and advisor in potentially adverse matters not only superceded any standard duty of loyalty Smith may otherwise have owed to Leor as it general counsel regarding those discrete matters, but also superceded any generic handbook Leor might have previously distributed to its employees regarding the normal level of confidentiality governing their e-mail communications.

See Guma Aguiar's Amended Reply Memorandum of Law in Support of the Special

Master's Findings Regarding the Attorney-Client and Work Product Privileges (DE# 118-2 at 3, 8/27/09). The undersigned is not persuaded by Aguiar's argument. There is no evidence that Natbony or anyone at Leor made assurances to Aguiar that he could disregard Leor's email policy so long as Mr. Smith was acting as Aguiar's personal advisor. To the contrary, the record establishes that both Mr. Smith and Aguiar, as employees of Leor, were subject to the email policy.

As the party invoking the attorney-client privilege, Aguiar has the burden of establishing its applicability. Aguiar has not met this burden because he has not shown a reasonable expectation of privacy in emails transmitted through Leor's server. See In Re Asia Global Crossing, Ltd., 322 B.R. 247, 259 (S.D. N.Y. 2005) (noting that "sending a message over [an] e-mail system was like placing a copy of that message in the company files. Short of encryption, . . . [e]mails could be reviewed and read by anyone with lawful access to the system."); Black v. State, 920 So.2d 668 (Fla. 5th DCA 2006)(finding attorney-client privilege did not apply to defendants' telephone call to former lawyer where, inter alia, the defendant was warned that telephone conversations were monitored and taped).

**2.    Exhibit 57**

Exhibit 57 is an email dated July 20, 2008 from James McCarthy to Aguiar. See Exhibit 57, (DE# 101, 8/4/09). The subject line reads: "Natbony/TK discussion topics." Id. The email reads in its entirety as follows: "Guma, Natbony discussion topics attached. I will call you tomorrow to discuss. Regards Jim." Id. Attached to the email is a list of various "discussion topics."

Mr. McCarthy works for Guma Aguiar. He is not an attorney. Aguiar argues that

Exhibit 57 is protected by the work product doctrine because it was prepared by Mr. McCarthy in anticipation of litigation. In support, Aguiar has presented the Court with the Declaration of James McCarthy (DE# 103-4, 8/4/09). In his declaration, Mr. McCarthy states that he is an agent and representative of Mr. Aguiar and that he prepared Exhibit 57 in anticipation of possible litigation. Id. at 2-3. Mr. McCarthy states that he met with Mr. Natbony on July 16, 2008. He further states that:

> [i]t was apparent to [McCarthy] from the content of that July 16 meeting that Aguiar had disputes with Kaplan and these entities. [McCarthy] therefore consulted with attorney Paul McCawley on July 17, 2008 regarding those disputed issues. It was only after [McCarthy] had consulted with Paul McCawley on July 17 that [McCarthy] prepared and sent the E-Mail on July 20.

Id. at 3. Mr. McCarthy's declaration does not state that he prepared Exhibit 57 at the direction of Mr. McCawley. Exhibit 57 does not contain litigation strategy[10] or opinion attorney work product. It is a list of discussion topics.

Leor has not rebutted the factual assertions in Mr. McCarthy's declaration. Rather, Leor points out that Mr. McCarthy's declaration does not state that "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." Id. at 14 (citing Davis, 636 F.2d at 1041) (emphasis omitted). According to Leor,

---

[10] Aguiar argues that "it is Aguiar's and McCarthy's strategic decisions over which issues should and should not be raised during a settlement meeting, made only after consulting with their counsel, which is revealed by Exhibit 57." See Guma Aguiar's Amended Reply Memorandum of Law in Support of the Special Master's Findings Regarding the Attorney-Client and Work Product Privileges (DE# 118-2 at 7, 8/27/09). The Court notes that there is nothing on the face of Exhibit 57 or on the record that indicates that certain discussion topics were intentionally omitted or would not be discussed with Mr. Natbony or Mr. Kaplan. Exhibit 57 does not reflect strategic decisions by Mr. Aguiar or Mr. McCarthy.

> The reasons for this omission are self-evident – not only does the chronology confirm that litigation was not truly anticipated at the time the McCarthy Email [Exhibit 57] was created, but the title and substance of the email itself confirm that the true primary motivating purpose behind the document's creation was to serve as a list of topics to be discussed with Natbony and Kaplan as part of on-going non-privileged discussions about various outstanding business matters.

Id. Leor further notes that Exhibit 57 was drafted approximately three months before Aguiar's counsel sent a pre-litigation demand letter and approximately six months before suit was filed. See Joint Memorandum of Law in Opposition to Aguiar's Assertion of the Attorney Client and Work Product Privileges (DE# 112 at 13-14, 8/18/09).

The Court agrees with Leor that Exhibit 57 is not protected by the work product doctrine. The Court finds that this case is distinguishable from Every Penny Counts, Inc. v. American Express Company, No. 8:07-cv-1255-T-26MAP, 2008 WL 2074407 (M.D. Fla. May 15, 2008). In Every Penny Counts, there was no indication that the chart analyzing the plaintiff's patent claims was intended to be disclosed to the defendant. Here, the contents of Exhibit 57 show that it was a list of topics prepared in anticipation of further negotiations with Mr. Natbony and Mr. Kaplan. At the time Exhibit 57 was prepared, the parties were still in discussions. In fact, Exhibit 57 is comprised of "discussion topics" as identified in the email. At the hearing, counsel for Aguiar advised the Court that Mr. McCarthy met with Mr. Natbony after preparing Exhibit 57 to try to resolve their disputes. See Transcript (DE# 97 at 49, 7/20/09). That Aguiar sent a pre-litigation demand letter approximately three months after Exhibit 57 was created further suggests that the parties were still attempting to resolve the issues and Exhibit 57 was not prepared in anticipation of litigation. See Place St. Michel, Inc. v. Travelers Property Casualty Company of America, No. 06-21817-CIV-LENARD/ TORRES, 2007 WL

1059561, * 5 (S.D. Fla. Apr. 4, 2007)(noting that "an initial disagreement between an insured and the carrier cannot give rise per se to anticipation of litigation."). Unlike Every Penny Counts, the contents of Exhibit 57 lists topics intended to be discussed with Mr. Natbony and Mr. Kaplan in furtherance of negotiations. Thus, it cannot be said that "the primary motivating purpose behind the creation of [Exhibit 57] was to aid in possible future litigation." Davis, 636 F.2d at 1041. For these reasons, the Court finds that Exhibit 57 is not protected by the work product doctrine.

## CONCLUSION

Based on the foregoing, the Court finds that Exhibits 3 and 57 to the deposition of Paul McCawley are not attorney-client and work product, respectively.

DONE AND ORDERED in Chambers at Miami, Florida, this **23rd** day of September, 2009.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Seitz
All Counsel of Record